SHAW (SCOVILL v.). See Case No. 12,552.

## Case No. 12,724.
### SHAW v. SHAW et al.
[4 Cranch, C. C. 715.] [1]
Circuit Court, District of Columbia. March Term. 1836.

DESCENT AND DISTRIBUTION—TERMS OF SALE OF REAL ESTATE—DELINQUENT PURCHASER—COMMISSIONERS—COURTS—POWER TO GRANT RELIEF IN EQUITY.

1. This court, when sitting in a case of partition of intestate real estate, under the Maryland law of descents (Laws 1786, c. 45), sits as a county court of common law, exercising a summary jurisdiction given by the statute, and has no authority to grant relief as a court of equity.

2. In making sale of the real estate of an intestate, where it will not admit of a specific division among the heirs, according to Act Md. 1786, c. 45, § 8, the commissioners may annex to the terms of sale a condition that, if the purchaser shall fail to comply with the terms of sale within a certain number of days, the property shall be resold at his risk; and it is not necessary that the first sale should have been ratified by the court, in order to charge the first purchaser with the loss upon the resale.

3. If the husband of one of the heirs is a delinquent purchaser, and liable for the loss upon the resale, his wife's share of the estate cannot be charged with the loss; but if one of the heirs becomes a purchaser, and fails to comply with the terms of the sale, his share of the purchase money may be applied to make good the loss, although he may, after his default, have assigned his share of the estate, or of the purchase money, to a stranger. The assignee must take it cum onere.

4. The commissioners appointed, under the act of descents, to sell the real estate of an intestate, are liable to be made defendants to a bill in equity, and may be compelled to answer and account for the money which they have received.

Bill in equity by a feme covert [Mary Eleanor Shaw], by her next friend [Joseph N. Fearson], to have the proceeds of the sale of her share of the intestate real estate of her deceased father vested in a trustee for her sole and separate use, and to charge the loss, which occurred upon the resale, to the first purchasers, one of whom was a coheir with the plaintiff, and the other, the husband of another coheir, and to make their shares of the purchase money liable for such loss. The bill states that the complainant's father, James Gannon, in 1829, died intestate, seized of certain real estate in Washington, leaving four children his heirs at law, namely, Michael Gannon, Margaret Drury, wife of Plumer J. Drury, Bartholomew Gannon, a minor, and the complainant, Mary Eleanor Shaw, wife of the defendant, William P. Shaw. That upon a petition for a division of the estate, according to the Maryland act of descents (Laws 1786, c. 45, § 8), the commissioners reported that it was not susceptible of division, without loss, &c., and on the 7th of June, 1832, it was ordered by this court that the commissioners should sell the estate upon certain terms of credit, and take bonds, &c., payable to each representative according to their respective shares, and that they should bring the money and bonds into court. That it was so sold, at public auction, on the 24th of November, 1832, on those terms, and with this further condition and notice; that the commissioners reserve to themselves the right, in case any purchaser should fail to comply with the terms of sale in five days, to resell the property, sold to him, at public auction, on reasonable terms, and after reasonable notice, and to charge and hold the former purchaser responsible for all loss, costs, and charges in consequence of such failure and resale. That the defendant, P. J. Drury, one of the representatives of the said James Gannon in right of his wife, was the purchaser of certain lots, part of the said real estate for $4,400; and that the defendant, Michael Gannon, one of the heirs, purchased another part of the estate, at the same sale, for $2,000. That the whole amount of sales was $6,538, to one fourth of which the complainant is entitled, after paying costs, &c. That Drury and Gannon neglected and failed to comply with the terms of the sale. That the property which they purchased was afterwards, on the 26th of August, 1833, advertised again for sale at their risk, and resold on the 21st of September, 1833, at a loss, to Drury, of $1,430; and at a loss, to Gannon, of $545. That the complainant, since her father's death, intermarried with the defendant, William P. Shaw, who has become insolvent; and if the purchase-money gets into his hands, it will go to his creditors; she therefore prays that it may be secured to her separate use; and that the loss upon the resale may be made good out of the shares of Gannon, and of Drury in right of his wife; and that the commissioners may be enjoined from paying over to Gannon and Drury, their shares of the purchase-money and bonds. William P. Shaw, the husband of the complainant, answered and admitted all the facts charged, and offered himself ready to submit to any decree the court might think proper to make. The bill was, by consent, amended,

---

[1] [Reported by Hon. William Cranch, Chief Judge.]

by charging an assignment of Michael Gannon's share to James Gettys, one of the commissioners, who demurred to the bill. Drury and wife, also, demurred as to so much of the bill as sought to charge Drury with the loss on the resale of the property purchased by him, and to deduct that loss from Mrs. Drury's share of the purchase-money; and they assign for cause of demurrer, that the purchase was at a sale by the commissioners, under and by virtue of an order or decree of this court on an original suit by petition in behalf of the heirs of James Gannon, yet pending in this court, and that the supposed sale to Drury is void, because it has not been reported to and ratified by the court in that cause; and that all questions relating to that supposed purchase belong to this court in that cause only, and not in the present cause; and because the complainant has not shown any title to such relief. And as to so much of the bill as seeks to secure the complainant's share to her separate use, the same defendants demurred, because that question belongs to the said petition-cause, and not to this cause. And as to so much of the bill as seeks to charge Michael Gannon's share for the loss upon the resale of the property purchased by him, the same defendants (Drury and wife) plead, that before this suit was brought he assigned his share to James Gettys in trust for certain purposes in which these defendants are interested. As to the residue of the bill, they answered and admitted that James Gannon died seized, and intestate; that his four children named in the bill are his heirs at law; that a petition was filed by them in this court for a division of the real estate, which is still pending; that the complainant has, since the death of her father, intermarried with the defendant, William P. Shaw, who is insolvent; but they claim to be his creditors, and, as such, protest that his share ought not to be liable for the loss on the resale, &c. Michael Gannon had not answered. The commissioners demurred to so much of the bill as seeks relief against them.

The cause now came on to be heard upon the demurrers and plea, and was argued by C. Cox, in support of the same, and by Mr. Marbury, on the other side.

C. Cox, in support of the demurrer, on the ground of the pendency of the other suit, for the division of the property, cited Brown v. Wallace, 4 Gill & J. 479, 494, 496, 509; Diggs v. Walcott, 4 Cranch [8 U. S.] 179; McKim v. Voorhies, 7 Cranch [11 U. S.] 279; Elliott v. Peirsol, 1 Pet. [26 U. S.] 340; Richardson v. Jones, 3 Gill & J. 163, 186; Butler v. State, 5 Gill & J. 511. To show that the sale was not valid because not ratified by the court, he referred to the Act of Maryland, 1797, c. 114, § 6; Massey v. Massey, 4 Har. & J. 144; Anderson v. Foulke, 2 Har. & G. 354; Richardson v. Jones. 3 Gill & J. 163. To show that the wife's interest was not altered by the sale, he cited State v. Krebs, 6 Har. & J. 31,

and Leadenham v. Nicholson, 1 Har. & G. 277, 278.

Mr. Marbury, contra. cited Kenny v. Udall, 5 Johns. Ch. 464; Haviland v. Bloom, 6 Johns. Ch. 178; and to show that the commissioners had power to annex the condition of resale at the risk of the first purchaser, he referred to Sugd. Vend.

Mr. Cox, in reply, referred again to Richardson v. Jones, 3 Gill & J. 163, 186.

CRANCH, Chief Judge, after stating the case, delivered the opinion of the court (THRUSTON, Circuit Judge, absent), as follows:

1. The first ground of demurrer suggested by these defendants is, that there is a suit, depending on the common-law side of this court, in which the complainant may have the relief which she seeks here. But this, I apprehend, is a mistake. The court, in that cause, sits as a county court of common law, exercising a summary jurisdiction given by a statute which gives no power to grant the relief sought by this bill, and which this court can only give when sitting as a court of equity.

2. The second ground of demurrer is, that as the sale was not ratified, it was inchoate, and, therefore, Drury and Gannon were not liable for the loss. But where, according to the terms of the sale, the purchaser agrees to be liable for the loss if he should fail to comply with the terms of the sale according to the contract, and he does so fail, and thereby prevents the ratification of the sale, he becomes liable without ratification.

3. The third ground of demurrer is, that the condition for resale, in case of non-compliance with the terms of sale, is void because the court had not prescribed any such condition; and the commissioners could not add any thing to the order of the court. But by Act 1786, c. 45, § 8, the sale is to be made under the direction of the commissioners; and by Act 1797, c. 114, § 6, it is to be made agreeably to the order of the court. If the terms prescribed by the commissioners are not inconsistent with the order of the court, they are valid, and form part of the contract of sale. The condition of resale at the risk of the first purchaser, was not inconsistent with the order of the court in that case, and, therefore, was not void.

4. The fourth ground of demurrer is, that Mrs. Drury's share cannot be prejudiced by the act or neglect of her husband. This demurrer is to that part of the bill which seeks to render her share liable for the loss occasioned by her husband's not complying with the terms of sale. It seems to me that the same equity which will protect the complainant's share from the debts of her husband, should protect Mrs. Drury's from the consequences of the acts or negligence of hers. I think, therefore, that the demurrer must be sustained as to so much of the bill as seeks to charge the share of Mrs. Drury.

5. The plea that Michael Gannon assigned his share to James Gettys before the commencement of this suit, is no answer to the complainant's equity. The assignee must take it cum onere. The assignment was made after Gannon's default, by which the complainant's equity accrued. I think the plea should be overruled.

6. The demurrer of the commissioners is only to so much of the bill as seeks relief against them. The bill seeks no relief against them, except an injunction to stay the money and bonds in their hands until the further order of the court. But they have the funds and must account for them. This demurrer, therefore, must be overruled, and they should answer to the amount of money and bonds in their hands, in case the court should order the money to be invested in securities for the benefit of the married women.

I think the demurrer, to so much of the bill as seeks to have the complainant's share set apart and laid out in productive securities for her separate use, must be overruled.

MORSELL, Circuit Judge, concurred.

The cause was afterwards set for final hearing, and the court decreed according to the above opinion.